SCHNIDER v. ELDRIDGE.

4-6384                                                      152 S. W. 2d 565

Opinion delivered June 9, 1941.

*C. O. Raley* and *Bryan J. McCallen,* for appellant.

*Taylor & Hines,* for appellee.

GRIFFIN SMITH, C. J. Great Western Land Company, by deed, conveyed to Herman Brown a tract of land thought to contain 118 acres. Brown conveyed seventeen acres, then sold the remainder to Christine Eldridge Smith. Christine conveyed to R. J. Spain "the north seventy acres" of the tract, it being assumed, as

appellees contend, that 100 acres were embraced within the area described by metes and bounds. In reality, there were but 66.71 acres.

Before the deed executed by Christine to R. J. Spain was placed of record, Spain sold to Rena Schnider, appellant. To facilitate transfer, the Smith-Spain deed was destroyed and Christine, at Spain's request, conveyed directly to Rena Schnider. The deed recites "the north seventy acres of the following described real estate." Then followed the measured description.

There is a stipulation that from 1932 to 1936 the land was carried on the tax book as "East of river south part northwest quarter section 36, township 21, range 5 east, 100 acres." A redemption certificate of April 4, 1939, issued by the county clerk, recites payment of taxes for 1937 and 1938 under the description quoted, with the addition, "valuation, $300."

A dwelling house was erected by Brown on the southern part of the tract. It is worth $800 to $1,000, according to appellees. Northeast of this house, near a levee, there is another building. Immediately after purchasing the land appellant went into possession by occupying the house near the levee. She did not at that time lay claim to the southernmost part, upon which the more substantial house stood. Appellant's deed is dated March 18, 1940. April 15, 1940, Christine executed a deed to her mother, Pearl Eldridge, conveying fifteen acres on the south end of the tract. It contained the more expensive building.

Suit in ejectment was brought in Clay circuit court by Rena Schnider, in which she demanded possession of "the south three-fourths of the northwest quarter of section thirty-six, west of the levee right-of-way, excepting therefrom a piece in the southwest corner thereof 200 by 600 feet." It is contended by appellant that the house she moved into near the levee is so situated that members of her family are virtually deprived of ingress and egress; that the only practicable outlet is across the south fifteen acres deeded by Christine to her mother. It is contended by appellant that Christine's deed to her

mother was not executed until notice had been served, demanding possession of the property described in the ejectment suit.

In an answer and cross-complaint, ownership of the south fifteen acres was alleged by Pearl Eldridge. Facts relating to the various transactions were set out, coupled with an allegation that there had been a mutual mistake in respect of the acreage conveyed by Herman Brown, and later by Christine; that all parties erroneously assumed that Brown owned 100 acres, and that the north seventy acres—not the entire tract—were sold to appellant. There was a prayer for transfer to equity and reformation.

M. B. Schnider, acting as agent for his wife, inspected the land prior to purchase. He was accompanied by R. J. Spain, the then owner. He did not remember a conversation with Spain in which the latter explained that the south boundary "would be somewhere up the levee above the highway." His wife did not see the property before "trading for it." In acquiring the property from Spain the Schniders exchanged real estate in Steele, Mo., valued at $1,200. They would not have consummated the deal if informed that the Clay county land contained less than seventy acres.

Charles Eldridge testified that he acted as agent for his daughter in relation to the land; that he talked with Spain and the latter understood he was getting the north end, "and that the south end was not included." He also claimed to have talked with M. B. Schnider before Schnider purchased of Spain. The conversation, in part, was about a tentative south boundary line "somewhere about twenty rods up the levee."

It was agreed that Spain, if called as a witness, would testify that he understood the south end of the land was not to be included in Christine's deed, and: "I am sure Schnider understood he was getting the north three-fourths of the tract."

The chancellor found that the term "seventy acres" was inserted in the deed by mutual mistake, both parties believing the tract contained 100 acres. There was a

further finding that the land was not purchased by the acre, and "acreage was not of the essence of the contract." It was the chancellor's view that any claim the plaintiff might have because of a deficiency in acreage was offset by timber cut by the plaintiff from the defendant's lands.

No complicated question of law is involved. The facts testified to (not all of which have been set out in this opinion) are ample to sustain the chancellor's finding that appellant must have known that "the north seventy acres" was not intended as a conveyance of the entire tract. In accepting the deed as written appellant may have been uninformed as to the total acreage, but she was not ignorant of the fact that some land was reserved.

Affirmed.